RÒGER WEBB, BY HIS NEXT FRIEND, OTIS M. OLIVER v. FOY CLARK, GUARDIAN AD LITEM FOR STEPHEN HOWARD THOMAS.

(Filed 19 May, 1965.)

**1. Negligence § 7;  Automobiles § 41a—**

Evidence that defendant had exceeded the speed limit in a 20 mile per hour zone prior to the accident is irrelevant when the accident does not occur in a 20 mile per hour speed zone and there is no evidence that defendant was exceeding the speed limit in the zone in which the accident occurred, since only negligence which proximately causes or contributes to the injury in suit is of legal import.

**2. Automobiles § 13—**

When the condition of a road is such that skidding may be reasonably anticipated, the driver of a vehicle must exercise care commensurate with the danger, and while the mere skidding of a vehicle does not imply negligence, if the skidding is due to the fault of the driver amounting to negligence, it may form the basis of recovery.

**3. Automobiles § 41j—**

    Evidence tending to show that the highway in the area of the skidding was dry except at the intersection of a rural road where something had "run across the road" or water had drained from the rural road, and that plaintiff passenger did not see the ice until just before the accident, and that the driver, operating the vehicle at lawful speed, lost control when the vehicle skidded on the ice, resulting in the injury in suit, *held* insufficient, without evidence that the skidding was due to negligent default, to be submitted to the jury on the issue of negligence.

APPEAL by plaintiff from *McLaughlin, J.,* September 1964 Civil Session of SURRY.

Action *ex delicto* to recover damages for permanent personal injuries.

From a judgment of compulsory nonsuit entered at the close of plaintiff's evidence, he appeals.

*Barber & Gardner by Wilson Barber for plaintiff appellant.*

*Hudson, Ferrell, Petree, Stockton, Stockton & Robinson by Ralph M. Stockton, Jr. and J. Robert Elster for defendant appellee.*

PER CURIAM. Plaintiff's evidence presents these facts: About noon on 30 December 1963 Roger Webb, a 17-year-old boy, who was driving his father's 1962 Ford automobile with his knowledge and consent and had Leonard Hutchins as a passenger, picked up as a passenger at Epworth Church Stephen Howard Thomas, a 17-year-old boy. It was Sunday and during the afternoon he was driving around generally. About 2:30 p.m. he stopped at a service station about four miles from the scene of the accident. He knew Thomas had received his license to drive an automobile about two weeks before. Thomas asked him to let him drive the Ford. He would not deny that either he or Hutchins suggested to Thomas that he drive the Ford, because Thomas had not had much opportunity to drive his father's car. When they left the service station, Thomas was driving, and plaintiff was beside him on the front seat.

Plaintiff testified as follows:

    "In shady places, the road was wet and icy or appeared icy. The three of us talked about it and 'we mentioned to each other and said we was *(sic)* going to have to be careful about it.' We were on Highway 103 headed toward Mount Airy and east of the town. * * * We were traveling in a westerly direction and the posted speed limit was 35 miles per hour and Steve drove about that speed. Before reaching the scene of the accident there were wet places that looked like ice on the road and it was 'pretty curvy.' As we entered the curve at the scene, something had run across

the road, water or whatever it was, and the car went sideways, hit the bank on the right side and then back across the road into the tree. Just before we run over the water, or whatever it was, I hollered, 'Steve, watch that ice,' I believe, and the next I knew, we hit the tree.

"Just after we ran over the water, or whatever it was, it looked like that after we started going sideways Steve 'just froze or something.' The water, or whatever substance it was, was located on the road where I am now indicating and that is about 150 feet from the curve which the officer has drawn on the board. After hitting the bank beyond the curve the automobile 'shot straight across the road into the tree.'

"I estimate the car was being driven between 30 and 35 miles per hour at the time we ran over the water or ice in the road."

Plaintiff testified on cross-examination:

"While Steve was driving, two or three times Leonard Hutchins and I told Steve how to take the curve. * * * I knew that I needed to show him how to make those two or three curves I just told you about. I did not see any ice in the highway several hundred feet north of the point of the accident and at the point I have indicated on the map I saw water, ice or something in the road. * * * I saw the ice just right before we got to it and at that time Steve was driving between 30 and 35 miles per hour and was reducing his speed at that time. The car went out of control when he hit the ice or whatever it was and it slid on the ice. As Steve drove up to the ice he was driving real well and there was nothing unusual about the way he was driving. * * * I testified in Mr. Barber's and Mr. Gardner's office that Steve was driving on his side of the road and that he was not violating the speed limit. And that is correct. * * * I had seen ice on the highway in spots before I turned the car over to Steve Thomas."

Plaintiff testified on redirect examination:

"The curve which we were approaching going toward Mt. Airy is about a ninety degree angle to our left."

Robert Montgomery, a State highway patrolman and witness for plaintiff, about 3 p.m. arrived at the scene of the accident on Highway 103 approximately one-half mile east of Mt. Airy. He testified in substance, except when quoted: Dirt road 1746 intersects Highway 103 near the scene of the accident. From this intersection, Highway 103 is slightly downgrade to Mt. Airy. Highway 103 is of concrete construction and about 17 feet wide. He saw a 1962 Ford automobile about 18

feet from the edge of the highway on its right-hand side looking away from Mt. Airy wrecked against a tree to the extent that it was a total loss. He saw skid marks in the highway leading to the automobile. Two such marks led from the tree to a bank across the highway. Marks of about 50 feet long on the shoulder of the highway led up to the bank. The total length of the skid marks was approximately 126 feet. It is about 66 feet from the bank to the tree. The weather was clear and cold. In the vicinity of the scene of the accident and from the city limits of Mt. Airy, there are road signs designating a 35-mile-an-hour speed zone. In the curve before reaching the tree, there is a sign that shows a curve ahead and a 20-mile-an-hour sign. It is a very sharp curve— about 90 degrees. The last sign before reaching the intersection shows a 35-mile-an-hour speed limit. In the area of the intersection of Highway 103 and dirt road 1746, he observed water and dampness. Highway 103 generally was dry, but at the intersection it was wet, where water had drained down from road 1746 into the right lane of Highway 103, and had then drained along the highway back onto the shoulder and into the ditch. On that day he had had no reports of any ice. He had patrolled since 9 a.m., and had not seen any ice. He testified: "At the hospital I talked to Stephen Howard Thomas and he stated that he had skidded on ice and lost control saying the ice was located at the intersection of 1746 and 103. In that area I observed water and dampness."

Plaintiff offered no other evidence, except two doctors, who testified as to his injuries, and his father whose testimony was principally about his injuries.

Plaintiff's evidence shows that the accident occurred in a 35-mile-an-hour speed zone. In respect to defendant's driving in this speed zone, plaintiff testified: "I saw the ice just right before we got to it and at that time Steve was driving between 30 and 35 miles per hour and was reducing his speed at that time." Plaintiff also testified: "I testified in Mr. Barber's and Mr. Garner's office that Steve was driving on his side of the road and that he was not violating the speed limit. And that is correct." Plaintiff alleged in his complaint that defendant was negligent in "exceeding the speed limit of 35 miles per hour." His evidence refutes this allegation of negligence.

Plaintiff further alleged in his complaint that defendant was negligent "in exceeding the posted speed limit of 20 miles per hour in entering the sharp curve to his left." Plaintiff has no evidence to support this allegation of negligence, and even if he did have such evidence, it would not benefit him, because the skidding of the automobile resulting in his injuries did not occur in a 20-mile-an-hour speed zone as affirmatively shown by his evidence. It is hornbook law that the only negligence of

legal importance is negligence which proximately causes or contributes to the injury under judicial investigation. *McNair v. Richardson,* 244 N.C. 65, 92 S.E. 2d 459.

Plaintiff's evidence does not support his allegation that defendant was guilty of reckless driving as defined in G.S. 20-140(b). *Dunlap v. Lee,* 257 N.C. 447, 126 S.E. 2d 62.

G.S. 20-141(c) provides in relevant part that the fact that the speed of a motor vehicle is less than the posted speed limits "shall not relieve the driver from the duty to decrease speed * * * when special hazard exists * * * by reason of weather or highway conditions, and speed shall be decreased as may be necessary * * * to avoid causing injury to any person or property either on or off the highway, in compliance with legal requirements and the duty of all persons to use due care."

"The mere skidding of a motor vehicle is not evidence of, and does not imply, negligence. [Citing authority.] The skidding of a motor vehicle while in operation may or may not be due to the fault of the driver. [Citing authority.] Skidding may be caused or accompanied by negligence on which liability may be predicated. Accordingly, skidding may form the basis of a recovery where it and the resulting damage is caused from some fault of the operator amounting to negligence on his part." *Hardee v.. York,* 262 N.C. 237, 136 S.E. 2d 582.

Plaintiff's evidence, considered in the light most favorable to him, shows these facts: It was Sunday afternoon and they were riding around generally. In shady places the road was wet and icy or appeared icy. He testified: "As we entered the curve at the scene, something had run across the road, water or whatever it was, and the car went sideways, hit the bank over on the right side and then back across the road into the tree. Just before we run over the water, or whatever it was, I hollered, 'Steve, watch that ice,' I believe, and the next I knew, we hit the tree. * * * I did not see any ice in the highway several hundred feet north of the point of the accident and at the point I have indicated on the map I saw water, ice or something in the road. * * * I saw the ice just right before we got to it and at that time Steve was driving between 30 and 35 miles per hour and was reducing his speed at that time. The car went out of control when he hit the ice or whatever it was and it slid on the ice."

When the condition of a road is such that skidding may be reasonably anticipated, the driver of a vehicle must exercise care commensurate with the danger, to keep the vehicle under control so as to avoid injury to occupants of the vehicle and others on or off the highway. *Hardee v. York, supra; Wise v. Lodge,* 247 N.C. 250, 100 S.E. 2d 677. Plaintiff's evidence does not show that the condition of Highway 103

in the area where the skidding began and occurred was such that skidding could be reasonably anticipated, and does not show that the skidding of the automobile was caused by any failure of defendant to keep a proper lookout and to exercise reasonable care and precaution to avoid it. Plaintiff's evidence does not support his allegations that defendant was negligent in that he drove the car in violation of G.S. 20-141(c), or that he failed to exercise due care in its operation.

*Wise v. Lodge, supra,* relied on by plaintiff is factually distinguishable, in that in that case the highway was covered with ice, and snow was falling slightly when the collision occurred. *Hardee v. York, supra,* is also factually distinguishable, in that in that case, *inter alia,* defendant's evidence showed that in the vicinity of the accident there was solid ice in the lane all the way down, a sheet of ice frozen over all the way.

Plaintiff's evidence, considered in the light most favorable to him, fails to show that defendant was guilty of negligence proximately causing his unfortunate injuries. The judgment of compulsory nonsuit entered below is

Affirmed.